COHEN, J.
 

 D.G. (“Father”) and R.L. (“Mother”) lived together for approximately ten years. Three children were born of the relationship: L.G., M.G., and a third child whose death at a very young age led to the initiation of these proceedings. The Department of Children and Family Services (“DCF”) had a report pending when the infant died. The report concerned Mother’s substance abuse and the birth of the baby girl with drugs in her system. Upon the infant’s death, DCF took the two surviving children into custody.
 

 DCF filed a two-count dependency petition against both parents. Count one focused on the parents’ abuse of drugs and the infant’s death, without alleging any wrongdoing by either parent in the death of the infant. Count two incorporated the allegations of count one and, without more, alleged a substantial risk of prospective abuse, abandonment, or neglect.
 

 Both parents denied the allegations of the petition at their arraignment, and an adjudicatory hearing was set. When Mother failed to appear at the hearing, the trial court found she had consented to the dependency pursuant to section 39.506(3), Florida Statutes (2011). The court rescheduled Father’s adjudicatory hearing.
 
 *1064
 
 However, it then prematurely held a dispo-sitional hearing. The hearing resulted in entry of an “Order of Adjudication, Disposition, Acceptance of Case Plan, and Notice of Hearing.” The judge found the children dependent, repeating almost verbatim the allegations contained in the petition, and entered a case plan with the goal of reunification.
 
 [1]
 

 Thereafter, the trial court conducted what was termed an adjudicatory hearing as to Father. Without objection, the court took judicial notice of the findings made in the original order adjudicating the children dependent, although DCF presented no evidence at the hearing and Father had, at all times, denied the allegations in the petition. Based on this “evidence,” the trial court found DCF had failed to prove that Father either abused or neglected the children.
 
 [2]
 
 Despite substantial evidence to the contrary,
 
 [3]
 
 the court specifically found the evidence insufficient to establish that Father had a substance abuse issue.
 

 We must accept the trial court’s findings of fact, given the conflicting nature of the testimony. Notwithstanding those findings, the trial court found the children were at substantial risk of prospective abuse, abandonment, or neglect by Father, because he admitted he was aware of Mother’s ongoing substance abuse and had left the children unsupervised with her. The court reaffirmed the case plan entered at the time of the initial disposition, but struck Father’s substance abuse tasks while ordering random urinalysis testing. This resulted in a continued non-relative placement, but with unsupervised visitation by Father.
 

 DCF concedes that the trial court erred in its procedural handling of the case. To its credit, DCF shoulders some of the responsibility, acknowledging that:
 

 The parties inadvertently led the court astray concerning proper procedure. That led to an understandable but misguided effort to expeditiously handle the dependency proceedings, which resulted in the lower court’s rush to disposition based on the mother’s failure to appear while postponing the adjudicatory hearing on the petition’s allegations concerning father. There was no separate petition or motion for supplemental adjudication filed....
 

 This acknowledgement reflects the framework of section 39.507(7)(a), Florida Statutes (2011), which provides:
 

 For as long as a court maintains jurisdiction over a dependency case, only one order adjudicating each child in the case dependent shall be entered. This order establishes the legal status of the child for purposes of proceedings under this chapter and may be based on the conduct of one parent, both parents, or a legal custodian.
 

 We discussed the operation of this statute in
 
 P.S. v. Department of Children and Families,
 
 4 So.3d 719 (Fla. 5th DCA 2009).
 
 [4]
 
 In
 
 P.S.,
 
 the mother entered a consent plea that resulted in the children
 
 *1065
 
 being adjudicated dependent. Following that adjudication, DCF filed a second amended petition alleging separate and distinct grounds against the father. After a hearing, the trial court found the children at risk and entered a “second” order adjudicating the children dependent due to a substantial risk of prospective abuse or neglect. We found the entry of a second order of dependency improper and noted the trial court’s improper focus on the issue of prospective abuse or neglect. Instead, section 39.507(7)(b) required the trial court to hold an evidentiary hearing to determine whether the father had actually abused, abandoned, or neglected the children:
 

 It is significant to observe that while a child can be found dependent if he or she is “at substantial risk of imminent abuse, abandonment, or neglect,” section 39.507(7)(b) only requires a trial judge, who has already adjudicated a child to be dependent, to determine whether each parent has actually abused, abandoned or neglected the child. Thus, in this case, the primary purpose of the evidentiary hearing should have been to determine if the father had actually abused or neglected R.S. and B.S. — not whether the children were at substantial risk of imminent abuse or neglect.
 

 Id.
 
 at 720-21 (footnote omitted).
 

 Assuming, in the present case, we were to treat the hearing conducted as that which was required under 39.507(7)(b), the trial court found Father did not abuse or neglect the children. Instead, contrary to the procedure outlined in
 
 P.S.
 
 and the statute, the trial court improperly considered the issue of prospective abuse or neglect. This was error.
 

 The finding of dependency defines the legal status of the children, not the parents. On remand, the trial court is not without options.
 
 See J.P. v. Dep’t of Children & Families,
 
 855 So.2d 175 (Fla. 5th DCA 2003);
 
 B.C. v. Dep’t of Children & Families,
 
 864 So.2d 486 (Fla. 5th DCA 2004).
 

 REVERSED and REMANDED.
 

 EVANDER and JACOBUS, JJ., concur.
 

 [1]
 

 . Both Father and his counsel were present for the hearing. Mother was present only through counsel.
 

 [2]
 

 . No allegations were made as to abandonment.
 

 [3]
 

 . There was evidence in the record that Father had "watered down” urine samples provided for assessment. Other evidence reflected that Father had been placed on a program to wean his long-term use of prescription medications for pain and had been unsuccessful in those attempts. Numerous prescription bottles were located in the parents’ bedroom, many with patient names other than those of either parent.
 

 [4]
 

 . Neither side cited this case to the trial judge.